**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leon HUDSON & Reginald Smith,
Defendants–Appellants.**

Nos. 87–1869, 87–2053.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1988.

Decided April 11, 1988.

---

Robert C. Crawford, Michael L. Chernin, Milwaukee, Wis., for defendants-appellants.

Elsa C. Lamelas, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Leon Hudson and Reginald Smith appeal from their convictions for entering a federally-insured credit union with the intent to commit a larceny, in violation of 18 U.S.C. § 2113 (a) and 18 U.S.C. § 2. The crime took place on November 19, 1986 at the Eaton Employees Credit Union in Milwaukee, Wisconsin.

## I

■ The focus of appellants' argument is their claim that the district court improperly failed to exclude from the trial record, pursuant to Fed.R.Evid. 404 (b), evidence pertaining to three larcenies of savings and loans institutions that they are alleged to have committed.[1] The first occurred on October 11, 1985 at the Security Savings and Loan Association in Milwaukee, Wisconsin; the second on November 1, 1985 at the Midwest Savings and Loan Association in Bismarck, North Dakota; and the third on December 2, 1986 at the Mutual Savings and Loan Association in Milwaukee, Wisconsin.

At the outset of trial Hudson made an oral motion *in limine*, subsequently joined by Smith, seeking to prevent the government from introducing any Rule 404 (b) evidence. The government had submitted a "Memorandum Regarding 404 (b) Evidence" on the day before trial commenced. That Memorandum provided brief descriptions of a total of five prior crimes, evidence of which the government contemplated might be introduced at trial, and summary argument as to why the evidence would be admissible under Rule 404 (b).

Before any evidence of other crimes was actually adduced by the government, the district court allowed argument by the parties in the absence of the jury. In denying appellants' motion, the district court expressly found that (1) the other crimes evidence proffered by the government (which included evidence pertaining to the three larcenies listed above) was admissible primarily on the issues of intent, plan and identity, (2) the evidence would be clear and convincing and (3) the probative "impact" of the evidence outweighed any unfair prejudice.

The district court did not evaluate the five alleged other crimes separately, and with the one exception noted below, did not engage in any further analysis of the admissibility of that evidence at the various times it was admitted. However, the trial record does reveal at least five occasions, including final pre-deliberation instructions, when the trial judge instructed or reminded the jury as to the purposes that other crimes evidence can properly serve.

## II

Whether evidence of other crimes, acts or wrongs is admissible under Rule 404 (b) turns on determinations of relevancy, and is therefore left to the sound discretion of the trial court. *See United States v. Sinn,* 622 F.2d 415, 416 (9th Cir.1980). Consequently, our review here is limited. We will reverse the district court only if we find a clear abuse of discretion. *See United States v. Taggatz,* 831 F.2d 1355, 1358 (7th Cir.1987); *United States v. Harris,* 761 F.2d 394, 398 (7th Cir.1985).

■ In the leading Rule 404 (b) case in our Circuit, *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984), we established a four-part test for determining the admissibility of evidence of other crimes, wrongs or acts.[2] Such evidence is admissible if:

---

1. Hudson asserts that the admissibility of the evidence pertaining to appellants' alleged "casing" of the Eaton Employees Credit Union two days before the November 19, 1986 larceny should have been determined under Rule 404 (b). We do not agree. That purported conduct by Hudson and Smith can most appropriately be viewed as part and parcel of the crime with which they are charged. As such, its admissibility is determined by a standard Rule 401/Rule 403 relevancy analysis, which leads to the conclusion that the evidence was admissible.

2. Rule 404 (b) states:

(1) The evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Id.,* at 779. *See also Taggatz,* 831 F.2d at 1358.

Our role on review is not to second guess the results reached by the trial court in applying the *Shackleford* standards. *See United States v. Beasley,* 809 F.2d 1273, 1278 (7th Cir.1987). Rather, our task is to ascertain whether the district court engaged in a "principled exercise of discretion" that went beyond a mere mechanical invocation of that four-part test. *Id.* at 1279. In our analysis of the three categories of other crimes evidence, we remain mindful that all four *Shackleford* requirements must be fulfilled.

A.  The November 1, 1985 Midwest Savings and Loan Larceny

This is the most troublesome of the three incidents of other crimes evidence adduced by the government. It is of two dimensions. First, the testimony by Sheriff Garret Knudson of Kitter County, North Dakota and Detective Richard Schaible of the Bismarck, North Dakota Police Department established that Hudson and Smith were apprehended on the interstate highway east of Bismarck in a van that had been linked by the authorities to the Midwest Savings and Loan robbery. Detective Schaible testified that upon inventorying the contents of the van he discovered a briefcase containing an amount of money approximately equal to the amount of money reported stolen from the Midwest Savings and Loan Association. Schaible also testified that both Leon Hudson and Reginald Smith were charged with the Midwest

Savings and Loan robbery. He testified further that Hudson subsequently pled guilty to a charge of theft of property, and that Smith, who had been charged as a juvenile, was transferred to the custody of juvenile authorities in Wisconsin.

In addition to the above-described evidence pertaining to the November 1, 1985 Midwest Savings and Loan robbery, the government introduced through the testimony of Detective Schaible eighty-two photographs he found in the van in which Hudson and Smith were riding on November 1, 1985. Those pictures show appellants in various poses and locations (a motel room, a limousine, a parking lot, etc.). A number of the snapshots picture Hudson, and/or Smith clowning with large amounts of cash in their hands, stuffed in their pants or in their mouths and displayed on a table or in a briefcase. Other than the testimony of Detective Schaible that he discovered these pictures in the van in which appellants were riding on November 1, 1985, the government made no effort to link the pictures to the Midwest Savings and Loan larceny or any other relevant act by Hudson or Smith.

The government attempted to elicit from Detective Schaible a hearsay account of the Bismarck, North Dakota larceny provided to him by one of the tellers who witnessed the incident. However, that effort was foiled when the district court sustained a hearsay objection from Hudson's trial counsel. The government made a second effort to enter testimony from Detective Schaible as to the modifications made or planned in the teller counters at Midwest Savings and Loan as a result of the November 1, 1985 robbery. That effort was also thwarted by a sustained hearsay objection. The government offered no further evidence to establish the nature of the Midwest Savings and Loan larceny. The record contains no evidence whatsoever as to the details of that crime.

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ At the time the evidence pertaining to the Midwest Savings and Loan robbery was introduced, the district court did not engage in a Rule 404 (b) analysis. Consequently, we cannot discern whether it consciously considered the significance of the void in the government's evidence. Regardless, because the government did not in any way establish that the Bismarck, North Dakota robbery was similar in nature to the charged crime, and was therefore relevant as proof of appellants' intent, identity or motive, the second *Shackleford* criterion is not satisfied. Thus, there is no question the evidence should not have been admitted.[3] The district court clearly abused its discretion when it permitted this other crimes evidence to be introduced. The evidence could have served no purpose other than to demonstrate to the jury that Hudson and Smith were experienced bank thieves.

■ The district court also clearly abused its discretion when it permitted the eighty-two photographs into evidence. First, the government offered no theory as to how these pictures were relevant to either the Midwest Savings and Loan larceny or, in a non-Rule 404 (b) context, somehow linked directly to the charged crime. More importantly, it failed to demonstrate how the pictures are in any way probative of appellants' intent, identity or plan with regard to the Eaton Employees Credit Union larceny. In the absence of proof that the pictures were directed toward establishing one of those matters identified by the district court as being at issue, there was no basis under the first *Shackleford* criterion for allowing them into evidence.

The trial judge did not expressly engage in a *Shackleford*-type analysis when trial counsel for both appellants objected to the admission of the photographs. Rather, apparently in response to the reference by

Hudson's trial counsel to Fed.R.Evid. 403, the trial judge observed first that "[t]he Court is of the opinion that while some of these photographs were irrelevant, the fact that they were all found together in the place in which they were found, I suppose, makes it totality of them since some of them are relevant to the considerations of the case." [sic]

The Rule 401–type, logical relevance considerations reflected in the comments of the trial judge roughly parallel the inquiry directed by the first *Shackleford* criterion. Nevertheless, the conclusory observation that "some of [the pictures] are relevant to the considerations of this case" (presumably because they were found in appellants' van on November 1, 1985), achieved as it was in the absence of any demonstration by the government of a nexus between the pictures and an element of the charged crime, is not sufficient to support a finding that the district court engaged in the type of "thoughtful exercise of discretion" required when other crimes evidence is proffered. *See Beasley*, 809 F.2d at 1280–81.

Although other crimes evidence often will be relevant to issues in a criminal trial, there is no presumption to that effect. *United States v. Hernandez–Miranda*, 601 F.2d 1104, 1108 n. 4 (9th Cir.1979). It is logical to require the government to bear the burden of showing the relevance of other crimes evidence that it seeks to rely upon. *See id.* at 1108. The government failed to satisfy that burden here. Because of the outrageous conduct they portrayed, some of the photographs were highly prejudicial to appellants and could have served no other purpose than to support the inference that Hudson and Smith are arrogant young men who take pride in the bank robber vocation they shared. That is precisely the kind of inference Rule 404 (b) is

---

**3.** During the aforementioned colloquy between the trial judge, the Assistant United States Attorney, and counsel for both defendants with regard to appellants' motion *in limine,* the trial judge inquired of the government whether it had "any evidence or knowledge of the modus operandi of the robbery in Bismarck." Assistant United States Attorney Lamelas responded that even though she had not subpoenaed the teller witnesses she could "certainly assure the Court that the incident there was a similar nature and the defense attorneys in this case have seen the police reports from that incident, and I'm sure he has noticed that it was a similar type of robbery." [sic] This type of "assurance" by the government, without more, is not sufficient to satisfy the second prong of the *Shackleford* test.

intended to prevent. *United States v. Swiatek*, 819 F.2d 721, 727 (7th Cir.1987).

## B. The December 2, 1986 Mutual Savings and Loan Larceny

All of the government's evidence regarding this alleged prior crime was introduced through the testimony of Mariella Barnes, the Mutual teller who was robbed on December 2, 1986. Ms. Barnes made no identification of Leon Hudson, in-court or at any other time. On cross-examination she admitted that even though Hudson was in a line-up she attended on April 2, 1987, she did not pick him from the line-up. The government offered no other evidence to establish that Hudson was one of the two perpetrators of the Mutual Savings and Loan larceny.

██ The third *Shackleford* criterion requires that the evidence of a defendant's involvement in a prior crime, wrong or act be clear and convincing. There is no substantive evidence in the trial record to link Leon Hudson to the December 2, 1986 robbery of the Mutual Savings and Loan. The trial judge's failure to engage in a separate Rule 404 (b) analysis at the time of Ms. Barnes' testimony may well be explained by the fact that neither defense counsel objected at that time. Regardless, there is no indication that the district court addressed the critical third *Shackleford* criterion, or attached any significance to the government's failure to satisfy that requirement with regard to Hudson. Accordingly, we need not equivocate in holding that the district court clearly abused its discretion when it allowed into the trial record evidence pertaining to the Mutual

Savings and Loan larceny without at least providing a cautionary instruction to the jury that the evidence was not relevant to the guilt or innocence of Leon Hudson.[4]

██ Ms. Barnes identified Reginald Smith as one of the perpetrators of the Mutual Savings and Loan robbery at the April 2, 1987 line-up and in court. These two identifications by the victim teller are sufficient to constitute clear and convincing evidence that Smith was involved in the December 2, 1986 crime. Therefore, we must evaluate the Mutual Savings and Loan evidence against the three remaining *Shackleford* requirements in order to determine if the district court's failure to exclude that evidence from the government's case against Smith constituted error.

The 18 U.S.C. § 2113 (a) offense with which appellants are charged is a specific intent crime. In order to secure a verdict of guilty from the jury the government was required to prove beyond a reasonable doubt, *inter alia*, that the defendants entered the Eaton Employees Credit Union with the intent to commit a larceny. We have previously held that "intent is automatically in issue in a criminal case, for the purpose of [Rule] 404 (b), if the crime is a 'specific intent' crime." *United States v. Gruttadauro*, 818 F.2d 1323, 1327–28 (7th Cir.1987). "In specific intent crimes, the intent element must be separately and directly proven by the government." *Id.* at 1328. It is not merely a formal issue. *Id.*

Specific intent can be proven through the use of other crimes evidence if the requirements of Rule 404 (b) are satisfied. *Unit-*

---

**4.** At the conclusion of his cross-examination of Ms. Barnes, Hudson's trial counsel stated, "I would request an instruction at some point as to the effect of evidence going in only on one defendant in a quote, defendant/co-defendant situation." [sic] The trial judge responded, "Well, we cover that in the instructions of the case." In his instructions to the jury before it began deliberation, the trial judge did not explicitly address the evidence brought in through the testimony of Ms. Barnes. Rather, he stated:

Although the defendants are being tried jointly, you must give separate consideration to each defendant. In doing so, you must analyze what the evidence in the case shows with respect to each defendant, leaving out of the consideration any evidence admitted solely against the other defendant. Each defendant is entitled to have his case decided on the evidence and the law applicable to him.

Because the trial judge never expressly ruled, or informed the jury, that the evidence pertaining to the December 2, 1986 Mutual Savings and Loan robbery was admitted only against Smith, the above jury instruction cannot be said to preclude a finding of abuse of discretion by the district court regarding the admission of that evidence as part of the government's case against Hudson.

*ed States v. Draiman*, 784 F.2d 248, 254 (7th Cir.1986). The district court's ruling on appellants' motion *in limine* and its instructions to the jury make clear that the other acts evidence it permitted into the trial record was admitted in order to show, *inter alia*, intent. Thus, without addressing the issues of identity or plan, we can conclude that the evidence as to Smith's alleged involvement in the Mutual Savings and Loan theft was admissible because it was "directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged." *Taggatz*, 831 F.2d at 1358.

Ms. Barnes testified that the persons who robbed the Mutual Savings and Loan entered the institution, approached her window, asked her for change, and soon thereafter jumped over the counter and grabbed cash from her drawers and a nearby shelf. That is essentially the same *modus operandi* used by the persons who robbed the Eaton Employees Credit Union. The two larcenies occurred only twelve days apart. There is no doubt that the evidence shows that the Mutual Savings and Loan robbery was similar enough and close enough in time to be relevant to the issue of whether Smith, if he was in the fact one of the perpetrators of the Eaton Employees Credit Union robbery, acted with the requisite intent necessary to make out a violation of § 2113 (a).

As just observed, the Mutual Savings and Loan evidence is probative of whether Smith, if he was present, entered the Eaton Employees Credit Union on November 19, 1986 with the intent to commit a larceny. There is no indication that the evidence had any discernable unfair prejudicial effect on Smith. The probative value/unfair prejudice balance contemplated by the fourth *Shackleford* criterion results in exclusion of other crimes evidence only if its probative value is substantially outweighed by the danger of unfair prejudice. *United States v. Serlin*, 707 F.2d 953, 959 (7th Cir.1983). Since there is no indication of unfair prejudice to Smith, we have no reason to believe that the fourth *Shackleford* requirement was not satisfied.

The district court clearly erred when it admitted, without proper limiting instructions, the evidence pertaining to the December 2, 1986 Mutual Savings and Loan robbery against Leon Hudson. There was no abuse of discretion in the admission of that evidence against Reginald Smith.

C. The October 11, 1985 Security Savings and Loan Larceny

■ The district court did not abuse its discretion in allowing into the trial record the evidence as to this third other crime allegedly committed by the appellants. Our earlier analysis pertaining to the specific intent element that is part of the charged § 2113 (a) offense shows that this evidence was properly directed toward a matter in issue other than the propensity of Hudson and Smith to steal from savings and loans institutions. Further, the evidence reveals that the same "ask for change/counter jump" *modus operandi* used in the charged crime was employed in the Security Savings and Loan robbery. The only apparent difference in the former crime was that three young black men were involved rather than two young black men. Given the close similarity of the two larcenies, the thirteen months that elapsed between the two does not bar the drawing of an inference as to appellants' intent in entering the Eaton Employees Credit Union based on the evidence proffered by the government relating to the earlier event. *Shackleford*, 738 F.2d at 779. Therefore, there was no reason for the district court to find the second *Shackleford* criterion unfulfilled.

The third *Shackleford* requirement, that the evidence of appellants' involvement in the prior act be proven by clear and convincing evidence, also appears to have been satisfied. Giselle Green, the teller who was robbed at Security Savings and Loan, made an in-court identification of Reginald Smith as one of the three young black men who robbed her. In addition, Milwaukee Police Department Detective Gary Grundy testified that a palm print lifted from the crime scene at Security Savings and Loan on October 11, 1985 was identified as belonging to Leon Hudson.

Finally, we see no cause for concern regarding the fourth *Shackleford* criterion for admission of other crimes evidence. The evidence linking Hudson and Smith to the Security Savings and Loan larceny is probative of the element of intent regarding the charged crime. At the time of the testimony of both Ms. Green and Detective Grundy, the trial judge carefully reminded the jury of the limited use to which the evidence as to this other crime could be put. Thus, since there was no other indication that the admission of this evidence had any unfair prejudicial effect, it seems certain that its probative value was not substantially outweighed by unfair prejudice to appellants.

### III

We have determined that the district court improperly admitted evidence against both Hudson and Smith pertaining to their involvement in the November 1, 1985 robbery of the Midwest Savings and Loan Association in Bismarck, North Dakota, and the eighty-two photographs seized from their van. In addition, the trial court clearly abused its discretion in permitting into evidence the testimony of Mariella Barnes concerning the December 2, 1986 robbery of the Mutual Savings and Loan Association in Milwaukee, Wisconsin, without insuring by some means that the jury understood Barnes' testimony should not have been considered in determining the guilt or innocence of Leon Hudson. We believe the district court's failure to exclude this other crimes evidence requires us to reverse the convictions of Leon Hudson and Reginald Smith.

"[T]here can be no such thing as an error-free, perfect trial." *United States v. Hasting*, 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Thus, it is our duty to "consider the trial record as a whole and ignore errors that are harmless" *Id.* Nevertheless, even a non-constitutional error is not harmless if it "results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane*, 474 U.S. 725, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986), (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

The government produced three classes of direct evidence against Hudson and Smith as proof of their guilt of the charged offense. The out-of-court identifications of appellants by the Eaton teller who was robbed, Theresa Imanuele, were made when she was shown a set of photographs by F.B.I. Agent Daniel Craft. Ms. Imanuele's identification of Hudson's picture was equivocal. She made no in-court identification of either appellant. The photographs taken by the Credit Union's surveillance cameras are far from clear. Although they show two black men, the sequential still pictures are not of sufficient quality, by themselves, to provide a clear identification of Hudson and Smith as the perpetrators of the charged crime.

The final component of the government's direct evidence linking appellants to the Eaton Employees Credit Union larceny is the palm print and fingerprint evidence introduced through the testimony of Jack Patterson, a latent print examiner for the Milwaukee Police Department. Patterson testified that in his expert opinion there was no doubt that two of the latent palm prints lifted from the scene of the charged crime were made by the left and right palms of Leon Hudson. Patterson testified further that two other latent prints lifted from the crime scene were identical to the left little fingerprint and left palm print of Reginald Smith.

Upon viewing the entirety of the properly-admitted evidence (direct and other crimes evidence), we cannot say that it constituted overwhelming proof that Hudson and/or Smith committed the crime with which they were charged. Of the three categories of direct evidence the government adduced to prove appellants' guilt, only the expert testimony pertaining to the finger and palm prints was unequivocal and not subject to varying interpretations. Even that evidence could have been rejected or granted little weight by a reasonable jury.

It is not clear that without the improperly admitted other crimes evidence appellants' convictions would have been inevitable. *See Swiatek*, 819 F.2d at 729; *Beasley*, 809 F.2d at 1280. In the absence of other, overwhelming evidence of a defendant's guilt, evidence of other crimes is likely to play a substantial role in persuading a jury of the defendant's guilt of the charged crime. *Shackleford*, 738 F.2d at 783–84. It is possible that the evidence of the Midwest Savings and Loan robbery, the eighty-two photographs seized in connection with the investigation of that crime, and, with regard to Hudson only, the evidence pertaining to the Mutual Savings and Loan larceny in concert may have had a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253.

The government's use of other crimes evidence in proving its case against appellants was extensive and the direct evidence against them was far short of overwhelming. Therefore, because of the inherent potential for prejudice and confusion engendered by the other crimes evidence in this case, we are unable to find the several erroneous rulings by the district court to have been harmless error. *United States v. Bramlet*, 820 F.2d 851, 857 (7th Cir. 1987). Rather, due process requires that we reverse the convictions of Leon Hudson and Reginald Smith.

## IV

The convictions of Leon Hudson and Reginald Smith are reversed. The case is remanded to the district court for new trial. In light of the above holding; it is unnecessary for us to address the 6th Amendment ineffective assistance of counsel claim raised by Hudson.