**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Norman MICKE, Defendant–Appellant.**

**No. 86–2912.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1987.

Decided Sept. 30, 1988.

J. Timothy Gratz, Gratz Law Office, Madison, Wis., for defendant-appellant.

Debra L. Hodges, Asst. U.S. Atty., Madison, Wis., Grant C. Johnson, Asst. U.S. Atty., for plaintiff-appellee.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.[*]

Defendant Norman Micke was convicted on one count of a three-count indictment of willfully aiding and assisting in the preparation of the false and fraudulent 1982 income tax return of Charles and Judith Quirt. 26 U.S.C. § 7206(2).[1]

Defendant's corporation does business as Consulting Services, Ltd. Defendant prepares tax returns and is a tax adviser and business consultant. He had prepared Charles Quirt's tax returns for several years. In December 1982, Quirt sought investment advice and defendant recommended a tax shelter that involved purchasing equipment and leasing it for the pro-

duction of fuel alcohol. The Quirts' 1982 return, prepared by defendant, claimed depreciation on fuel alcohol production equipment that, the return asserted, had been placed in service December 28, 1982 and had cost $42,000. The return also claimed regular investment credit and business energy investment credit based on the same acquisition.

At trial the evidence showed that Quirt had purchased certain equipment from Twindale Farms, Inc. (Twindale) at a price of $42,000 and had leased it to Interstate Food and Fuel Corporation (IFF) for seven years at $700 per month. (The venture, however, was ill-fated and the anticipated returns were not received.) Although the bill of sale and lease, as well as Quirt's initial checks to Twindale for $20,000 and Consulting Services for $2,500 were dated December 28, 1982, it is conceded that these documents were executed in 1983, apparently in late January.

The government contended that Quirt did not obligate himself to purchase the equipment until after the beginning of 1983. Quirt testified that in 1982 he and defendant discussed a tax shelter involving the purchase and leasing of equipment. They talked about a price range of $30,000 to $40,000, but did not reach agreement on any specific equipment or price in 1982. Defendant, on the other hand, testified that Quirt had made his decision to buy and had communicated it to defendant in late 1982. Defendant was not only an adviser and tax return preparer for Quirt; he was vice-president of Twindale, was an adviser to both Twindale and IFF, and was active in getting investors to lease equipment to IFF. He apparently acted on behalf of Twindale and IFF in the sale and leasing transactions. Defendant's position is that Quirt's telling defendant of his decision to invest was not simply a communication by

[*] Some portions of this opinion have been adopted, with his consent, from a draft originally prepared by Senior Judge Fairchild for a majority of the panel. That majority no longer exists and Judge Fairchild now dissents.

1. Defendant was sentenced to three years' imprisonment, but on the condition that he be confined for 179 days, the execution of the remainder of the sentence was suspended and defendant was placed on probation for three years after release from confinement. He was also ordered to pay the costs of prosecution and a special assessment of $50. Following oral argument of his appeal, this court ordered his release on bail pending appeal.

Quirt to his adviser of his subjective intent, but also contractually bound Quirt to the purchase and lease. Defendant therefore argued at trial that the papers executed in January were properly backdated to December because they memorialized an agreement reached in December.

The parties agree and the court instructed the jury that the taxpayers "were entitled to the credits and deductions claimed on their 1982 tax returns only if the amounts claimed were actually paid for the appropriate property by the taxpayer in the year 1982, or were amounts for which the taxpayer incurred a personal liability in 1982."[2]

It is undisputed that Quirt mailed a handwritten letter to defendant, dated December 30 and postmarked December 31, 1982. The letter said:

As we discussed, I have decided to purchase the equipment piece we agreed on, from Interstate Food & Fuel Corporation.

Enclosed is the check for the amount you noted. Please contact me if there are any discrepancies.

Both Quirt and defendant testified that no check was enclosed. Quirt explained that the letter in effect was a sham, written at defendant's direction to support a false claim that a commitment to purchase had been made in 1982. Defendant testified to a different explanation. He said that Quirt had first telephoned concerning his decision, and defendant had told him "since I didn't have a down payment from him, that I needed something in writing indicating his intention to make his purchase that year."

## I. ALLEGED ERROR IN LIMITING THE JURY'S USE OF A WITNESS'S PRIOR AFFIDAVIT

On October 9, 1984, approximately two years before the trial, Quirt made an affidavit in the course of an investigation or

audit by the IRS. He swore to it before an IRS Special Agent. The affidavit described Quirt's participation in the transactions relevant to Count III. In general, the text of the affidavit and his trial testimony are similar, but a portion of the affidavit can be interpreted as inconsistent with his testimony at trial.

After referring to a conversation with defendant in December 1982 concerning an investment involving IFF, Quirt said:

MICKE presented me with various sheets reflecting different investment amounts, and from these sheets it was decided that I would participate in the amount of $42,000.... MICKE stated that I would be purchasing new equipment which was to be installed and operating during February of 1983 for what was called Phase II Production. I agreed to make this investment during 1982, but at no time during 1982 did I sign any documents, notes, write any checks, or secure any loans for purposes of investing in the equipment leasing program involving INTERSTATE FOOD AND FUEL.

The affidavit was brought out in cross-examination of Quirt. In explanation Quirt testified that he "had agreed to make an investment in '82. We had not established a price." The reference to $42,000 did not "reflect an agreement in '82, but rather what had been done in '83."

The court admitted the affidavit, but instructed the jury:

Evidence that on some former occasion a witness made a statement inconsistent with his testimony in this case may be considered by you only in determining credibility of the witness, and accordingly Exhibit 18, Charles Quirt's affidavit should be considered by you only for the purpose of impeaching his credibility.

---

**2.** Defendant was convicted on Count III of the indictment, which involved Quirt's return. The jury acquitted on Counts I and II, which made very similar charges concerning returns prepared by defendant for taxpayers named Koehler. The documents relevant to Counts I and II were also executed in 1983, but dated 1982. The government contended that the Koehlers

had not agreed on their purchases in 1982. They had, however, made substantial payments in December, though less than the full amounts claimed in the returns. It seems reasonable to suppose that these payments persuaded the jury that the Koehlers had made agreements to purchase in 1982, producing acquittal on Counts I and II.

Therefore, I instruct you not to treat that affidavit as having any potential substantive or independent testimonial value.

Defendant argues that the affidavit was properly admissible as substantive evidence on three theories:

■ First, defendant claims that the affidavit was not hearsay under Federal Rule of Evidence 801(d)(1)(A) because it was not "inconsistent with [Quirt's] testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Assuming that the special agent who administered the oath was authorized under 26 U.S.C. § 7622 to administer an oath, the investigative interviews that generated the affidavit were nevertheless not shown to be a "proceeding" for the purpose of the rule. See *United States v. Livingston*, 661 F.2d 239, 242–43 (D.C.Cir.1981), and cases cited therein.

■ Second, defendant claims that the hearsay exception for recorded recollection applied to the Quirt affidavit. Fed.R.Evid. 803(5). This exception would require that at the time of trial Quirt had an insufficient recollection to enable him to testify fully and accurately. There was no such showing.

■ Third, defendant claims that Quirt "adopted" the affidavit while on the witness stand so that it "became part of his oath-supported, court-given testimony subject to cross-examination and [is] not hearsay." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1274 (7th Cir.1984). This argument was not offered to the trial court. Moreover, although Quirt did answer that the affidavit was "true," that answer must be read in the light of his explanation that the "agreement" in 1982 did not include a price and that the $42,000 was agreed on in 1983. We do not find the "adoption" which defendant relies upon.

## II. ALLEGED ERROR IN ADMITTING EVIDENCE OF CONVERSATION CONCERNING BACKDATING OF TAX DOCUMENTS

The government produced Randall Grobe, an accountant, as the last witness in its case-in-chief. Grobe testified to a conversation with defendant in late November or December, 1982. Another taxpayer, not involved in this suit, had originally gone to defendant for preparation of his 1981 return, but then later went to Grobe to do his tax work. An extension had been obtained and Grobe was working on the return at the time of his conversation with defendant. Defendant, according to Grobe, approached Grobe at a meeting and asked if the taxpayer would still be interested in purchasing a tax shelter. The Grobe testimony went on:

A I said, "We're in the year 1982. We're not able to do that at this time."

Q What did he say in response to that, if anything?

A That he'd be able to have the documents backdated for that particular individual.

Q What was your response, if anything?

A I said I was not interested in getting my client involved in any backdating or preparation of fraudulent tax returns on that basis.

A colloquy at the bench had taken place just before this testimony. The substance of the expected testimony was described and defendant objected. The judge indicated that intent (willfulness) was in issue and that the relevance of the conversation to that issue "outweighs any of the unfair prejudice which the defendant claims would occur." The evidence was admitted. The judge was not asked to give an instruction limiting the use of the testimony and did not do so.

Defendant contends that admission of the Grobe testimony was improper under Federal Rule of Evidence 404(b). The government argues that proof of the Grobe conversation was relevant to the issue of defendant's intent and therefore admissible alternatively under either one of two rules of evidence, Rule 404(b) or Rule 801(d)(2)(A).

The substance of Grobe's testimony was that defendant was renewing an offer of a

tax shelter to another taxpayer and was offering to have the documents falsely backdated in order to support a fraudulent claim of tax advantages in a prior year. In the present case, defendant prepared the tax return for Quirt claiming acquisition of equipment in December 1982. The government contended that the acquisitions occurred in January 1983 and thus the returns were fraudulent. Because defendant had actively participated in the equipment transaction as well as prepared the returns, he had knowingly participated in the fraud, if there was any.

The parties agreed that documents reflecting the acquisitions (and leases) had been executed in January, but backdated to December by defendant. The sole issue at trial was whether the deal had been agreed on in December, or subsequently in January. If the former, the backdating was legitimate and the returns were not fraudulent; if the latter, the backdating and the returns were fraudulent.

■ Defendant argues that the evidence that he had recently offered to have a tax shelter document backdated for a different taxpayer so as to support a fraudulent tax return for that taxpayer is wholly irrelevant in proving the true date of the transaction in this case. It is his position that the evidence presented a great danger of influencing the jury to decide that the backdating here was improper. Testimony of defendant's willingness to backdate documents falsely on other occasions, defendant argues, cannot properly be used to show defendant's propensity to commit the offense charged by admitting it as a prior bad act under Rule 404(b). *United States v. Davis*, 838 F.2d 909, 914 (7th Cir.1988). Nor should it be admissible, he argues, to show character, which is prohibited by Rule 404(a). The latter argument was not made to the district court and will not be considered here for the first time.

■ The government argues that the Grobe testimony was offered as an admission of the defendant himself going to his state of mind and thus was admissible under Rule 801(d)(2)(A) [3] as an admission by a party. The government relies on *United States v. Kehm*, 799 F.2d 354 (7th Cir. 1986). In *Kehm*, we held that it was permissible prejudice to admit the defendant's boasts about earlier illegal acts, including the one with which he was charged. *Id.* at 357. In the present case, however, defendant did not mention backdating for taxpayer Quirt, but for another taxpayer. In *Kehm*, this court did not sort out the boasts, but found it all admissible. The government argues that the Micke–Grobe backdating conversation was close enough in time to be highly relevant to the defendant's state of mind at the time of the offense with which he is charged. Fed.R. Evid. 401.

The government alternatively argues that Rule 404(b), which permits evidence of other crimes, wrongs or acts to be admitted to prove intent, does not apply to this evidentiary issue. Here defendant only made an offer and did not discuss the actual commission by himself of some other crime, wrong or act. However, if we view it as a Rule 404(b) situation, as did the district court, the government then argues that it is necessary to apply the balancing test set out in *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984). That balancing was correctly done by the trial judge, the government argues, and the admission of the evidence constituted no abuse of discretion. *United States v. Tuchow*, 768 F.2d 855, 862–63 (7th Cir.1985).

■ We agree with the government that the Micke–Grobe conversation qualified as a hearsay exception under Rule 801(d)(2)(A) as a recent admission of a party. That alone, however, does not end our

---

**3.** Federal Rule of Evidence 801 provides, in pertinent part:

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(d) Statements which are not hearsay. A statement is not hearsay if—

. . . .

(2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity. . . .

inquiry. All evidence, including evidence that qualifies as an exception to the hearsay rule, must be relevant, as defined in Article IV of the Federal Rules of Evidence. Contrary to the government's argument, we believe that this evidence does fall under Rule 404(b) as some other similar crime, wrong or act. The fact that the evidence shows a mere offer by defendant to backdate a tax document instead of the actual act of backdating such a document is immaterial. The *offer* to commit a similar crime is itself a similar "act" for purposes of Rule 404(b). *See, e.g., United States v. Radseck*, 718 F.2d 233, 236–37 (7th Cir. 1983) (court admitted evidence that defendant had earlier *proposed* a kickback scheme similar to the one with which he was charged), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984); *United States v. Lea*, 618 F.2d 426, 431–32 (7th Cir.) (same), *cert. denied*, 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980).

■ We believe that the Micke–Grobe conversation was relevant to show defendant's intent to commit the crimes charged in the indictment. The government is required to prove the requisite intent of a crime—in this case willfulness—beyond a reasonable doubt. This court has held that the willfulness element in 26 U.S.C. § 7203 creates a specific intent crime. *United States v. Birkenstock*, 823 F.2d 1026, 1028 (7th Cir.1987). In so holding we cited *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam), dealing with "the meaning of willfulness in § 7206 and related statutes." *Id.* at 12, 97 S.Ct. at 23–24. The defendant argues that intent was merely a "formal issue." We have held, however, that " '[i]n specific intent crimes, the intent element must be separately and directly proven by the government.' It is not merely a formal issue." *United States v. Hudson*, 843 F.2d 1062, 1067 (7th Cir.1988) (citations omitted) (quoting *United States v. Gruttadauro*, 818 F.2d 1323, 1328 (7th Cir.1987)). If the government failed to prove willfulness, defendant would have been entitled to acquittal. Thus, intent in this case is not just a formality for the government.

■ The trial judge properly found that this evidence could be admitted only if the requirements of Rules 403 and 404 were met. The trial court found that the evidence was admissible under Rule 404(b) because the *Shackleford* requirements were met. Those requirements are:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Shackleford*, 738 F.2d at 779. Because the fourth requirement in the *Shackleford* test is the equivalent of the Rule 403 balancing test, the trial court necessarily found that both Rule 403 and Rule 404 were satisfied when it ruled that the evidence was admissible.

The district court properly found that both Rules 403 and 404(b) were satisfied. In coming to that conclusion there is no need to pursue the application of each of the *Shackleford* criteria as it is apparent each and all were satisfactorily met. The only one of the criteria that could be doubted is the fourth, the value of the evidence weighed against unfair prejudice. The trial judge did not overlook that possibility, but considered it, weighed it, and exercised his discretion in admitting the relevant evidence. *United States v. Brown*, 688 F.2d 1112, 1117 (7th Cir.1982) (citing *United States v. Watson*, 623 F.2d 1198, 1203 (7th Cir.1980)). We do not see the admission of the evidence as an abuse of discretion. The strength of the government's case need not be cut back to a minimum, under the balancing rule, just because the relevant evidence in question reflects adversely on the defendant. The jury must be convinced about the defendant's guilt beyond a reasonable doubt. Reasonable people may differ in some circumstances about the way the balancing tilts, but in this instance we agree with the trial judge.

## III. ALLEGED IMPROPER LIMITATION ON DEFENDANT'S RIGHT TO COUNSEL

 Attorney Michael O. Bohren was defendant's retained attorney of record, representing him at all pretrial stages and throughout the jury trial. Just before jury selection, Bohren informed the court that attorney J. Timothy Gratz would be acting as his co-counsel in the case. The government had subpoenaed Gratz as a witness. This was known to the defense. The government stipulated that it would not call Gratz as a witness in its case-in-chief, but it reserved the right to call him in rebuttal. The government objected to the participation of Gratz and informed the court of a potential conflict of interest. There was a discussion about whether Gratz would be questioning witnesses; Bohren informed the court that Gratz would not be questioning witnesses. Upon that basis the court allowed Gratz to join Bohren at the counsel table and to assist in the defense subject only to the agreed limitation.

The second day of trial, however, Bohren informed the court that defendant would take the stand to testify in his own behalf and would prefer that Gratz conduct the examination. The government again objected, indicating ethical concerns. Gratz had admitted previously representing two government witnesses in an unrelated civil matter. These witnesses had concluded their testimony. That testimony related to other counts of the indictment in which defendant was charged with the same type of fraud with which he was charged in Count III involving the tax return of the Quirts. The court declined to permit Gratz to conduct defendant's examination, but continued to permit Gratz to assist at the counsel table.

Defendant contends that this limitation infringed his sixth amendment right to counsel. It is undisputed that a defendant in a criminal trial has a right to representa-tion by counsel whom he has chosen and retained. This right is not absolute, but qualified, and must be balanced against the requirements of the fair and proper administration of justice. *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986); *United States v. O'Malley*, 786 F.2d 786, 789–90 (7th Cir.1986); *United States v. Rankin*, 779 F.2d 956, 958 (3d Cir.1986); *Wilson v. Mintzes*, 761 F.2d 275, 278–81 (6th Cir.1985). "In seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification." *Washington*, 797 F.2d at 1465.

 In this case, however, the court did not disqualify Gratz as additional counsel for defendant, but merely limited his participation in view of the particular circumstances. In an order governing the final pretrial conference, the trial judge required that each party appear at that conference represented by the trial counsel who would actually conduct the trial. At that conference attorney Bohren appeared, as he had previously, as defendant's only attorney of record. Gratz had made no appearance at the arraignment or otherwise in defendant's behalf. Bohren explicitly advised the court, when the matter arose on the first day of trial, that Gratz would not be questioning witnesses. It was on that basis that the court permitted Gratz to assist in the defense at the counsel table. That was an arrangement satisfactory to defendant.[4] Then midtrial Bohren suddenly advised the court that defendant now preferred that Gratz be allowed to conduct defendant's direct examination. Gratz addressed the court and stated that although he had in the past represented the two government witnesses, he did not believe that he appeared adverse to their interests because "the taxpayers win if Mr. Micke wins." The trial judge was not impressed with that argument, nor are we.

---

**4.** The record indicates that Bohren asked the court to allow Gratz to assist as his co-counsel. When the court inquired whether Gratz would be examining any witnesses, however, Bohren stated: "No, he will not." Thus, it appears that Bohren was merely asking the court to allow Gratz to sit at the counsel table and assist him. The court granted this request over the objection of the government.

It appeared that Gratz had drawn certain tax shelter leases for defendant which were involved in the trial and Gratz could have testified concerning their execution. He was professionally involved to some degree with representation not only of defendant (and was under government subpoena because of it), but also of two government witnesses.

The trial judge was faced with a situation involving the possibility of some impropriety existing or developing. Gratz's former clients who had testified were in effect complainants in the case against Gratz's present client. There was also the possibility that, after Gratz completed his examination of defendant, Gratz himself, as a government rebuttal witness, would replace defendant on the witness stand. The court in that situation exercised its sound discretion and decided not to permit Gratz's sudden, surprising, and late direct trial involvement. To have done otherwise would have been contrary to the understanding reached with the parties when the trial started, to which defendant did not object. The trial judge advised, however, that Gratz could continue to assist Bohren at the counsel table. When the court ruled, Bohren's only response was "fine"; Bohren did not object then. Defendant's only objection comes on appeal, and that is too late.

There is no question raised by defendant about the effectiveness of his other counsel of choice, attorney Bohren, who conducted his defense throughout the trial, assisted by Gratz. The decision in these rather unusual circumstances should be left primarily to the informed judgment of the trial judge. *Wheat v. United States*, —— U.S. ——, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), made that clear. In *Wheat*, the defendant moved for substitution of counsel two days before trial, rather than midtrial. Unlike *Wheat*, the desired counsel in this case was permitted to at least assist original counsel at the counsel table. The defense did not object to the court's ruling, unlike the situation in *Wheat*. In *Wheat* there was no conflict with a pretrial conference order, nor did defense counsel suggest that the desired counsel would not question witnesses. Nevertheless, the *Wheat* Court affirmed the refused substitution with these closing comments:

> The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Id.* at 1700. In this case, the trial judge properly exercised his informed judgment. We leave it "primarily" to his judgment, with which we find no error.

The judgment is AFFIRMED.

FAIRCHILD, Senior Circuit Judge, dissenting.

With all respect, I conclude that it was an abuse of discretion to admit Mr. Grobe's testimony concerning defendant's offer to have documents falsely backdated for a different taxpayer.

I

In this case the only issue was whether the taxpayers made their agreements in January, when the documents were executed, or in December, when the documents were dated. Testimony that defendant offered to backdate documents for a different taxpayer was wholly irrelevant in establishing the correct date of the agreements at issue. Yet it presented a substantial danger of improperly influencing the jury to decide that because defendant had been willing to backdate documents falsely for someone else, he backdated them falsely in this case. The only legitimate relevance was in establishing defendant's willfulness, and the testimony was completely superfluous in that respect. If the jury found that the agreements were made in January, and that the returns were therefore fraudulent, it could not escape finding that defendant was the architect of the fraud.

The danger of unfair prejudice was great, and the probative value minimal. The testimony should have been excluded under Rule 403, FEDERAL RULES OF EVIDENCE. Nothwithstanding relevance to the element of willfulness, evidence is to be excluded unless it meets the balancing test of Rule 403. *United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984).

The Supreme Court recently acknowledged "concern that unduly prejudicial evidence might be introduced under Rule 404(b)," and listed as one of four sources of protection from unfair prejudice "the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice. ..." *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

Although the trial judge, in admitting the evidence, asserted that its relevance to the issue of willfulness outweighed any unfair prejudice, there is nothing to show that his assessment was more than perfunctory. Under the other evidence in this case the jury could not have found the returns fraudulent without finding that defendant acted willfully. Rule 403 balancing "must be a principled exercise of discretion." *United States v. Beasley,* 809 F.2d 1273, 1279 (7th Cir.1987); *United States v. Hudson,* 843 F.2d 1062, 1065 (7th Cir.1988); and *United States v. Leight,* 818 F.2d 1297, 1302 (7th Cir.1987).

As to the date of Quirt's agreement to purchase, the sole evidence that the agreement had not been made in December was Quirt's testimony, arguably impeached by his affidavit to the IRS. Defendant's testimony that it was made in December was somewhat corroborated by the testimony of a disinterested third party who had considered a similar purchase. Thus there was virtually a one-on-one conflict in testimony, and the jury should have been free to resolve it without hearing that defendant had previously offered to backdate documents falsely for another taxpayer.

## II

There is a temptation to treat the court's limitation on Mr. Gratz' role as counsel as *de minimis,* for it seems unlikely that examination by Mr. Gratz rather than Mr. Bohren would have produced a different result. In this context, however, defendant need not demonstrate prejudice. *United States v. Rankin,* 779 F.2d 956, 960–61 (3d Cir.1986). *Wilson v. Mintzes,* 761 F.2d 275, 286 (6th Cir.1985). *Cf. Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 S.Ct. 288 (1984), involving denial of self-representation.

The government initially objected on the ground Mr. Gratz might be a witness, and later on what it termed ethical grounds. The court appears to have recognized only the former ground.

"In seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification." *United States v. Washington,* 797 F.2d 1461, 1465 (9th Cir.1986).

With all respect, I conclude that the government failed to carry its burden here as to either ground of objection.

As to the first ground, the government failed to indicate any probability that it would call Mr. Gratz to testify. It had stipulated to his testimony, but found it unnecessary to introduce it. The stipulation is not in the record, but it seems clear that Mr. Gratz drew the leases for defendant and could have testified concerning their execution. Thus his testimony would have related "solely to an uncontested or formal matter and there is no reason to believe that substantial evidence will be offered in opposition to the testimony...." *United States v. Johnston,* 690 F.2d 638, 642 (7th Cir.1982).

Mr. Gratz had earlier represented the Koehlers in a wholly unrelated business matter, the incorporation of a laundromat. When the Koehlers were considering buying the fuel alcohol equipment through defendant, Mr. Koehler had asked Mr. Gratz about the transaction, but Mr. Gratz had said he could not represent Mr. Koehler in that matter.

The government did not spell out any probability that Gratz obtained confidential information in his earlier representation of the Koehlers which would have been useful if he were cross examining them on behalf of defendant in this case, nor any other way in which his professional duty to the Koehlers arising out of the laundromat representation would or could conflict with his duty as counsel for defendant. See, for example, the type of showing successfully made in *Wheat v. United States,* — U.S. ——, 108 S.Ct. 1692, 1695, 100 L.Ed.2d 140 (1988) and *United States v. O'Malley,* 786 F.2d 786, 792 (7th Cir.1986).

Instead, the prosecutor offered only vague suggestions that Mr. Gratz had gained some knowledge of the Koehler's financial condition which might have assisted defendant (doubtless referring to the underlying transaction); and that the Koehlers would be unhappy to see Mr. Gratz act as counsel for defendant because they had "relied upon his presence at these meetings in drafting the leases ... to kind of protect them." The Koehlers were doubtless unhappy with the outcome of their investment.

In my view of the relationship between the Koehlers and Gratz there was neither "a demonstration of actual conflict [nor] a showing of a serious potential for conflict," and the presumption in favor of defendant's counsel of choice was not overcome. *Wheat,* 108 S.Ct. at 1700.

Argument by the government and remarks by the district judge suggest the proposition that one competent counsel of choice is enough, and a defendant has no right to insist that "co-counsel" examine a witness. To the contrary, where a defendant retains more than one counsel, disqualification of one of them from full participation is a denial of Sixth Amendment rights unless adequately supported by some consideration recognized in the cases and not present here. *United States v. Laura,* 607 F.2d 52, 58, 61 (3d Cir.1979), Adams and Rosenn, JJ., concurring.