**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Salvatore GRUTTADAURO,
Defendant-Appellant.**

Nos. 86–1722, 86–1874.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1987.

Decided May 7, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc June 24, 1987.

Michael B. Nash, Nash & Nash, Chicago, Ill., for defendant-appellant.

Louis M. Fischer, Appellate Section Criminal Div., Washington, D.C., for plaintiff-appellee.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Salvatore Gruttadauro, a union business agent, was found guilty by a jury on four counts of wilfully receiving money from an employer in violation of 29 U.S.C. § 186(b)(1) and (d) (1982).[1] On appeal, Gruttadauro raises several objections to his conviction. Gruttadauro argues that: there

---

1. Section 186 reads in part:

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

· · · · ·

(d) Any person who *willfully* violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

29 U.S.C. § 186(b)(1) & (d) (1982) (emphasis added).

was insufficient evidence for a conviction, the trial court's jury instructions were deficient, and the court erred in admitting, under Federal Rule of Evidence 404(b), evidence of his prior bad acts. Although we believe that Gruttadauro's 404(b) claim has merit, we conclude that the admission of this evidence was merely harmless error. We reject his other claims, and affirm his conviction.

## I.

Gruttadauro was the business agent for Local 1 of the Laborers' International Union of North America, AFLCIO. His position entailed going to job sites to organize laborers. While at job sites, he would collect initiation fees and quarterly dues. In exchange for dues payments, Gruttadauro dispensed union membership cards.

The incidents giving rise to the indictment involve Gruttadauro and William Hach, president and sole stockholder of William Hach & Associates, Inc. Hach's company specializes in concrete restoration work. Hach testified that beginning in the fall of 1977, representatives of various unions began putting pressure on him to employ union workers. Hach testified that he wanted to avoid unionization of his employees, and wanted the unions to "get off [his] back."

In July 1981, Hach was contacted by a union that wanted to unionize his employees. Hach wanted to tell this union that his employees were already unionized. Consequently, Hach sought Gruttadauro's help, and paid Gruttadauro for five union cards. By acquiring the cards, Hach could keep his employees on the job, and avoid unionization of his employees. The employees named on the cards did not authorize the payment or provide the money for the "dues," and were not members of the union.

■ A similar scenario was repeated several more times, in the spring, summer, and fall of 1982. Each time Hach was asked, by other unions, to produce union cards at job sites. Hach would then contact Gruttadauro and pay him for union cards. These last three incidents, along with the July, 1981 transaction, led to his indictment for wilfully receiving money from an employer in violation of 29 U.S.C. §§ 186(b)(1) and (d) (1982).[2]

Gruttadauro's defense, based principally on cross-examination of Hach, and Hach's assistant, Joyce, was that he was fooled by Hach into believing that a collective bargaining agreement between Local 1 and Hach's company existed.

2. Gruttadauro does not challenge the validity of the indictment on appeal. However, the two amici curiae in this case, Gruttadauro's local union and international union, argue that Congress' amendment in 1984 of 29 U.S.C. § 186, which changed § 186's intent requirement, requires the abatement of these proceedings.

We disagree with the amici, and believe that their assertion is disposed of by *Pipefitters' Local Union No. 562 v. United States*, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972). In *Pipefitters*, the defendants were convicted of conspiracy to violate 18 U.S.C. § 610, which prohibited a labor organization from making a contribution or an expenditure in connection with a federal election. However, after oral argument in *Pipefitters*, the Federal Election Campaign Act of 1971 became effective and made lawful what was previously unlawful —"namely, the financing of the establishment, administration, and solicitation of contributions for voluntary political funds from general union monies," *id.* at 434, 92 S.Ct. at 2274. In *Pipefitters*, the Court noted that although the general

rule is that "prosecutions under statutes impliedly or expressly repealed while the case is still pending on direct review must abate in the absence of a demonstration of contrary congressional intent," *id.* at 432, 92 S.Ct. at 2273, and that although the Court found no such congressional intent, the federal savings statute, 1 U.S.C. § 109, nullified any abatement of the proceedings, *id.* at 432–33, 92 S.Ct. at 2273. The Court distinguished *Hamm v. Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), which held that, in light of the Civil Rights Act of 1964, § 109 did not nullify an abatement of a prosecution of blacks for criminal trespass when they sat at a white lunch counter. The Court reasoned that *Hamm* was inapposite, because in *Hamm*, Congress substituted an affirmative right for what previously had been a crime. This case is similar to *Pipefitters*, because here Congress has not substituted a right for what was a crime; rather, Congress has kept the general statutory scheme in place and only has changed the penalty.

The record reflects, however, that Hach consistently rejected Gruttadauro's requests that he sign a collective bargaining agreement. Moreover, Gruttadauro never even gave Hach a copy of an agreement. Next to the union card numbers that allegedly were assigned to Hach's employees were the names of unknown persons.

The jury apparently rejected Gruttadauro's defense. He was found guilty of violating 29 U.S.C. §§ 186(b)(1) and (d). The district court sentenced him to two years probation and levied a $22,000 fine. Gruttadauro timely appealed his conviction.

## II.

Gruttadauro makes several challenges to the court's jury instructions. We believe that none of these challenges has merit.

■ Gruttadauro first challenges the failure of the district court to instruct the jury about the legality of "pre-hire" agreements. The court did not inform the jury of 29 U.S.C. § 158(f), which expressly permits collective bargaining agreements in the construction industry even if there is no showing that a union has obtained majority support from the employees. The government's case was that Hach's employees had decided not to join a union, so that Gruttadauro's acceptance of money from Hach violated § 186. Gruttadauro argues that the omission of a § 158(f) charge deprived him of a fair trial, because had the jury known of pre-hire agreements, it would have concluded that one existed here.

Gruttadauro did not object to the failure to give such an instruction at trial. *See* Fed.R.Crim.P. 30. Because he did not object, we analyze Gruttadauro's claim on appeal under the stringent plain error standard. *See United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987). We conclude that the failure to give this instruction probably had no impact on the jury's finding that the defendant was guilty, *United States v. Windfelder*, 790 F.2d 576, 583 (7th Cir.1986), and, therefore, was not plain error.

Furthermore, we note that Gruttadauro's trial defense was that he had been misled by Hach, and not that a pre-hire agreement existed. A defendant is entitled to his or her theory of defense only if the defendant has put forth the defense at trial. *Douglas*, at ——. Because Gruttadauro did not rely on the existence of a pre-hire agreement as a defense, it was not error for the judge not to give the instruction.

■ Gruttadauro also argues that the district court erred in failing to instruct the jury in the court's instructions—as opposed to in the theory of defense instructions—that an oral collective bargaining agreement is valid. Gruttadauro argues that had the jury been instructed that *as a matter of law* oral collective bargaining agreements are valid, it would not have found him guilty. We do not believe that the district court committed error. Although the district court might have considered putting the instruction in the law section of the instructions, the failure to do so was not error. The court's instructions, taken as a whole, adequately instructed the jury as to the legality of oral collective bargaining agreements. *See United States v. O'Malley*, 796 F.2d 891, 897 (7th Cir.1986) (citations omitted).

■ Gruttadauro also challenges the district court's failure to instruct the jury on 29 U.S.C. § 186(c)(4), the dues checkoff provision, which allows a union officer to receive dues from an employer as long as there is written authorization from each employee for the deduction and payments. The district court instructed the jury that "payments from an employer to a union are illegal with some exceptions that do not apply here."

The record shows that no evidence was presented as to the existence of a dues checkoff. Therefore, Gruttadauro was not entitled to have this instruction go to the jury. *See United States v. Keegan*, 331 F.2d 257, 264–65 (7th Cir.), *cert. denied*, 379 U.S. 828, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964) (instruction on § 186(c) exceptions properly withheld when no supporting evi-

dence in record); *see also Douglas,* at 1321.[3]

## III.

Gruttadauro also challenges the admission of other crimes evidence that was admitted pursuant to Federal Rule of Evidence 404(b).[4] We believe that Gruttadauro is correct that the evidence of prior bad acts was wrongly admitted. However, in light of the overwhelming evidence in the record against Gruttadauro, we conclude that this admission was harmless error.

The other crimes evidence that is challenged consists of two other alleged contacts between Hach and Gruttadauro that were similar to the acts contained in the indictment. In October of 1977, Hach's company was doing restoration work at Marina City. The business agent of another local union came to the site and asked to see the employees' union cards. Hach contacted Gruttadauro for help. Hach paid Gruttadauro the union initiation fee for four employees, and in exchange Gruttadauro gave Hach four union cards. Gruttadauro sold Hach these cards even though Hach told the defendant he would not sign a collective bargaining agreement at that time.

Gruttadauro and Hach had no further contact for several years. During this interim, no Local 1 official visited Hach's job sites, and no Hach employee paid union dues. In the spring of 1981, Hach was again asked by other locals to employ union workers. Hach sought out Gruttadauro's help, and once again Gruttadauro sold union cards to Hach, even though Hach refused to sign an agreement. The govern-

ment asserts that this evidence proves Gruttadauro's intent. The district court admitted it as being "relevant."

We use a four-part test, for crimes that do not require specific intent, to analyze whether the trial court correctly admitted evidence of a defendant's prior misconduct under Federal Rules of Evidence 403 and 404(b).

> Admission of evidence of prior or subsequent acts will be approved if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue (*i.e.,* such that 'the consequential fact may be inferred from the proffered evidence,' 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[8] at 404–49 (1982)), (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Liefer,* 778 F.2d 1236, 1242 (7th Cir.1985) (*quoting United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir. 1984)). We conclude that, because the first prong of the *Shackleford* test was not met, the evidence of prior misconduct should not have been admitted.

Evidence of prior bad acts is admissible to prove intent if intent is automatically in issue or if the defendant puts his or her intent in issue. We have said that intent is automatically in issue in a criminal case, for the purpose of 404(b), if

---

3. Gruttadauro also argues that the court's instruction on wilfulness was confusing. Gruttadauro did not object to this instruction at the instructions conference or after the instructions were given to the jury, so we must view his objections under a plain error standard, *Douglas,* at 1320. We believe that Gruttadauro has taken, out of context, various statements in the instructions. It is well recognized, however, that jury instructions must be viewed as a whole. *United States v. O'Malley,* 796 F.2d at 897 (citation omitted). The record also reflects that the given instruction was, in part, based upon the defendant's own proposed instruction. We believe that none of the objections to the

wilfulness instruction Gruttadauro raises on appeal has merit and that it was not plain error for the court to give the challenged instruction.

4. Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

the crime is a "specific intent" crime. *Lief-er*, 778 F.2d at 1242. When we use the phrase "specific intent" in a Rule 404(b) analysis, we are referring to an element in a statute that requires a defendant to specifically intend the consequences of his or her acts.[5] In specific intent crimes, the intent element must be separately and directly proven by the government. However, with non-specific intent crimes, as we said in *Shackleford* and *Liefer*, intent is only a "formal issue" and not "an essential element of the crime," so that the mental state can be inferred from the surrounding circumstances. *See Liefer*, 778 F.2d at 1243; *Shackleford*, 738 F.2d at 781. In *Shackleford*, we held that a statute with a general intent requirement of "knowing" was not a specific intent crime, because the mental state could be inferred from the circumstances of the case. We must decide whether the intent required in this case (wilfulness) is like a general intent mental state (such as knowing) so that intent is not automatically in issue, or whether wilfulness is like a specific intent crime. The government argues that, because wilfulness requires some intent—"greater than general intent"—the crime Gruttadauro was charged with was similar to a specific intent crime and the government could, therefore, introduce evidence of prior bad acts.

■ In this case, we conclude that the mental state of wilfulness is not similar to a specific intent crime, but rather is similar to the mental state of a general intent crime. Wilfulness is not a state of mind in which the defendant intends the consequences of his or her acts. Wilfulness need not be separately and directly proven by the government. Instead, wilfulness is a mental state that can be inferred from all the circumstances. Therefore, we reject the government's argument that wilfulness, as used in 29 U.S.C. § 186, is so similar to the mental state required in specific intent crimes that intent is automatically in issue.

■ The prior bad acts evidence would be admissible, however, if Gruttadauro had placed his mental state into issue. Gruttadauro's defense was that Hach led him to believe that a collective bargaining agreement existed between Hach's company and Gruttadauro's local. Gruttadauro did not defend himself by saying that he did not know his actions violated the law. Therefore, because the defendant did not directly put his mental state in issue, and because this is not a specific intent crime, the evidence of the 1977 and 1981 contacts were not admissible to show intent.

■ On appeal, the government argues, for the first time, that the prior bad acts evidence establishes a "pattern" of Gruttadauro's dealings with Hach, and that this pattern establishes the requisite intent. "Patterns of acts may show identity, intent, plan, absence of mistake, or one of the other listed grounds, but a pattern is not itself a reason to admit the evidence." *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir.1987) (emphasis in original). Wilfulness was defined in the charge as proof of awareness of the law or reckless disregard of it. We do not see how prior contacts with Hach (the alleged pattern) could show the intent that is required here, because these contacts do not demonstrate proof of Gruttadauro's awareness of the law or his reckless disregard of it.[6]

5. Recent Rule 404(b) cases in this circuit, although not setting forth this definition of specific intent, are in accord with this view. *See United States v. Harbour*, 809 F.2d 384, 387 (7th Cir.1987) (statute contained requirement that the defendant specifically intend to deprive the United States of the property taken); *United States v. Brantley*, 786 F.2d 1322, 1329 (7th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986) (fraudulent intent required by statute made the crime in question a specific intent crime); *United States v. Draiman*, 784 F.2d 248, 254–55 (7th Cir.1986) (intent requirement in mail fraud statute made it a specific

intent crime); *United States v. Liefer*, 778 F.2d 1236, 1243 (7th Cir.1985) (intent to distribute required by statute made the crime a specific intent crime).

6. The purpose of Rule 404(b) is to avoid the wholesale admission of bad act evidence. In cases involving general intent crimes, we urge prosecutors to argue all relevant 404(b) grounds for admission of evidence at trial. Post hoc rationalizations that would warp Rule 404(b)'s purpose should be avoided, otherwise Rule 404(b) will become a battered barrier against the wholesale admission of prior bad acts evi-

We believe, however, that admitting the challenged evidence was harmless error. *See Beasley*, 809 F.2d at 1280 (stating the harmless error standard). We do not believe that the admission of the evidence had a substantial or injurious effect, or influence, on the jury's verdict. The evidence that was properly admitted was sufficient for the jury to have found each of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The record supports the government's position that Gruttadauro knew Hach's employees were not union members and that they never intended to be. Moreover, the jury reasonably could have found, that given Gruttadauro's experience as a union business agent, and the four acts charged in the indictment, Gruttadauro's defense that he was fooled by Hach was not credible.

For the reasons set forth above, the judgment of the distict court is, therefore, AFFIRMED.

dence. *Cf. United States v. Chaimson*, 760 F.2d 798, 813 (7th Cir.1985) (Cudahy, J., concurring) ("The government must show the relevance of the evidence to the question of intent. It cannot simply flood the courtroom with other-crimes evidence on the grounds that the crime was one of specific intent.")