UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis TORRES, a/k/a Danny Torres,
Defendant–Appellant.

No. 91–3839.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1992.

Decided Oct. 8, 1992.

Joseph R. Wall, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Michael J. Backes (argued), Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge, and COFFEY, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

Dennis Torres was charged with intentionally threatening a federal witness in violation of 18 U.S.C. § 1513. At trial the government introduced evidence of prior acts of violence by Torres under Federal Rule of Evidence 404(b), alleging that this evidence, though unrelated to the charged crime, was introduced solely to establish Torres's intent when making the threats. A jury found him guilty, and the court, departing upward from the Sentencing Guidelines, sentenced him to 85 months in prison. Torres now challenges the admission of the prior acts evidence introduced to prove intent, and the upward departure, and we affirm.

## I. BACKGROUND

In August of 1990 a grand jury indicted eleven members of a cocaine distribution ring in Milwaukee, Wisconsin. One of these eleven was Diane Blas, who agreed to cooperate with the government and provide information about the ring. During her interviews Blas told the government that she and her husband had sold half-ounce packages of cocaine to Dennis Torres. She also revealed that Torres had been involved in the "Georgia Stop," during which he and Blas's husband, along with their travelling companions, were stopped by a Georgia state trooper who discovered two ounces of cocaine in one of the caravan vehicles. Torres had not been named in the conspiracy indictment, but he told police that he knew Blas was cooperating with the authorities and had informed them of his drug-related conduct.

On the morning of March 5, 1991, Juan Glarza, Diane Blas's father, was working at his wife's grocery store. Also present was Torrey Bodie, a salesman who was taking Glarza's grocery order. Around 8:15 a.m. Dennis Torres entered the store and asked for Diane Blas. Juan Glarza told him that Diane was not there. Torres became visibly agitated, and, in extremely vulgar and menacing language, threatened to severely harm Blas, Glarza, and Glarza's store. He told Glarza to tell Blas that he (Torres) was going to kill her for naming him to authorities, and then said that he also planned to destroy Glarza and the grocery store.

After making the threats Torres backed towards the door and reached into his coat pocket. Fearful that he might be reaching for a gun, Glarza pulled his gun from behind the grocery counter and fired a shot into the floor near Torres. Part of the floor or the bullet ricocheted into Torres's leg. At this time Torres grabbed Bodie and used him as a shield as he exited the store and jumped into a waiting getaway car.

A grand jury indicted Torres on one count of violating 18 U.S.C. § 1513, which provides that:

(a) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—

\* \* \* \* \* \*

(2) any information relating to the commission or possible commission of a Federal offense ... given by a person to a law enforcement officer;

or attempts to do so, shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

The government's theory at trial was that Torres intentionally threatened the property and persons of Juan Glarza and Diane Blas in retaliation for Blas's informing the federal prosecutors about his drug activity. To buttress this theory the government, in addition to presenting Glarza's and Bodie's versions of the grocery store incident, also introduced evidence of two prior acts committed by Torres in order to prove his

intent to retaliate against Blas. Torres objected to the admission of evidence regarding these acts, arguing that it was being introduced for an improper purpose; namely, revealing his propensity toward criminal behavior. *See* Fed.R.Evid. 404(b). The court overruled the objection, finding that the evidence was properly introduced for the purpose of demonstrating his retaliatory intent at the time of the threats, and was not being used merely to show a penchant for crime.

The first prior act was described by the mother of Torres's child, Lisetta Miranda. Miranda testified that in April of 1989, when she was living with the defendant, someone stole a television and VCR from their apartment. She heard on the street that Jose Santiago had done it, and so advised Torres. The two of them then drove to a car wash where they observed Santiago. Torres got out of his vehicle, argued with Santiago, and thereafter drew a gun and opened fire. Miranda could not remember where Torres was pointing the gun as he fired, but officer William Sincere later found bullet holes in the overhead door and wall of the car wash. No charges were filed in connection with this incident.

The second prior act introduced to prove Torres's retaliatory intent occurred on September 21, 1989, after reports of a street fight in Torres's neighborhood. Milwaukee police officer Cindy Rosenthal went to investigate the scene of the fight and discovered a partially loaded .22 automatic pistol clip. Approximately half an hour later, while still on the scene, Rosenthal heard shots close by. Witnesses advised her that a large white auto and a damaged silver Nissan automobile were involved in the shooting. Shortly thereafter Officer Rosenthal saw the silver Nissan on a nearby street and ordered the driver to pull over. Two of the car's occupants were arrested after officers saw a gun inside. Thirty-five minutes later, while waiting for a truck to tow the Nissan from the scene, Rosenthal observed the other vehicle (a large white auto) involved in the shooting, pass through an alley right in front of her. She pursued the vehicle until it stopped at a nearby house. Torres got out of the car

and Rosenthal ordered him to freeze, after which backup officers instituted a search of his person and vehicle. Torres had about $2,000 cash and two live .22 bullets on his person. He also had two guns, one a .22 caliber revolver, hidden under the armrest cushion in his car. The .22 clip recovered from the fight scene fit the .22 revolver Torres had tucked under the armrest. Torres was charged with two misdemeanor counts of carrying concealed weapons, which charges were pending at the time of the conduct charged herein.

After hearing the evidence of the threats at the grocery store, as well as the car wash shooting and the concealed weapons incident, the jury convicted Torres of intentionally threatening a federal witness. The probation officer calculated the applicable Sentencing Guidelines range using an Offense Level of 20 and a Criminal History category of IV, arriving at a range of 51–63 months. The government moved for an upward departure, contending that a Criminal History category of IV did not adequately reflect the seriousness of the defendant's past criminal conduct nor his likelihood of committing future crimes, as his record evidenced that he had previously engaged in several other criminal acts without being charged or convicted. *See* U.S.S.G. § 4A1.3. In support of this argument the government through Milwaukee police officer George Irizarry presented evidence at the sentencing hearing of Torres's prior criminal activity that it believed more accurately reflected the true extent of his criminal history. Irizarry, a gang crimes specialist, knew Torres and testified as to three incidents involving Torres where he was the investigating officer, specifically: (1) a 1988 gang-related battery where Torres allegedly beat a rival with a pipe; the charge was dismissed when the victim left the city in fear and his brother was too scared and intimidated to testify; (2) a 1988 strong-armed robbery and beating of a rival gang member during which Torres allegedly taunted the victim ("We got your gold, punk") with his theft of an expensive gold chain; the robbery charge was pending at the time of trial;

and (3) a 1989 act of criminal damage to property, wherein Torres allegedly went to a rival gang member's house in the company of other gang members and helped destroy the rival's mother's car with concrete chunks; Torres was charged with criminal damage to property and later acquitted. The government also relied on the car wash shooting, for which no charges were filed, and the concealed weapons incident, for which charges were pending, as proof that the Guidelines underestimated the defendant's true dangerousness.

The court was of the opinion that the evidence presented at the sentencing hearing and at trial was sufficient to allow it to consider all five acts (the battery, the robbery, the criminal damage to property, the car wash shooting, and the concealed weapons incident) in sentencing Torres. It found that if he were convicted for these acts they would add a maximum of 11 points to his Criminal History score under Guideline §§ 4A1.1 and 4A1.2; two each for battery and criminal damage to property, three each for robbery and the car wash shooting (reckless endangerment), and one for carrying concealed weapons. These extra points would bring his Criminal History score to 19. Thus, according to the court, he merited the same treatment as someone in Criminal History category VI. Keeping the same Offense Level of 20, this change in the Criminal History category would increase his sentencing range to 70–87 months. The court proceeded to sentence Torres to 85 months, to be followed by three years of supervised release.

## II. ISSUES

Torres raises two issues on appeal: (1) Did the district court abuse its discretion in admitting evidence of the car wash shooting and the concealed weapons incident as proof of his specific intent to retaliate against Diane Blas? and (2) Did the government meet its burden of proving by a preponderance of the evidence that Torres had committed the acts used to justify the upward departure?

## III. DISCUSSION

### A. *Evidence of Prior Bad Acts*

Federal Rule of Evidence 404(b) provides:

**Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).[1] The principle behind the Rule is that evidence of crimes or acts other than those charged should not be admissible merely to show that the defendant, having committed other bad acts, has a propensity toward crime or a bad character. *See United States v. Harvey*, 959 F.2d 1371, 1373–74 (7th Cir.1992). Such evidence may be admissible, however, to prove some other fact at issue, such as motive, opportunity, intent, or the other elements outlined by the Rule. *Id.* Here the government presented the other acts evidence as proof of Torres's retaliatory intent. He now appeals the court's decision to admit the evidence over his objection, arguing that the evidence failed to demonstrate his intent and was merely used to attack his character before the jury.

We review a court's decision to admit Rule 404(b) evidence for an abuse of discretion. *United States v. Hudson*, 884 F.2d 1016, 1019 (7th Cir.1989), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). This Circuit applies a four-part test when examining Rule 404(b) evidence, which may be admitted where:

(1) the evidence is directed toward establishing a matter in issue other than the

**1.** This section of Rule 404 was amended effective December 1, 1991 to require the prosecution in a criminal case, upon request of the accused, to give reasonable pretrial notice of its intent to use other acts evidence and the general nature of any such evidence. Notice may be given during trial if the court finds that good cause for the lack of pretrial notice has been shown. Torres does not contend that the government failed to give adequate notice here.

defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Lennartz*, 948 F.2d 363, 366 (7th Cir.1991); *United States v. Robinson*, 956 F.2d 1388, 1395 (7th Cir.1992), *petition for cert. filed*, 61 U.S.L.W. 3200 (July 23, 1992). Torres maintains that the evidence of the car wash shooting and the concealed weapons incident did not meet the first, second, and fourth parts of this test, and thus should have been excluded. We examine each part in turn.

### 1. Matter At Issue Other Than Propensity

■ The first requirement is that the evidence must be relevant to some matter at issue in the case (i.e., intent), rather than merely establishing the defendant's propensity to commit crimes. In *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984), we held that other acts evidence of intent always relates to a matter at issue other than propensity when the defendant is charged with a specific intent crime.

> When the crime charged requires proof of specific intent, we have held that, because it is a material element to be proved by the government, it is necessarily in issue and the government may submit evidence of other acts in an attempt to establish the matter in its case-in-chief, assuming the other requirements of Rules 404(b) and 403 are satisfied.

*Id.* at 781; *see also United States v. Gruttadauro*, 818 F.2d 1323, 1327–28 (7th Cir. 1987). Torres was charged under 18 U.S.C. § 1513, which is titled "Retaliating against a witness, victim, or an informant." To establish a violation, the government must demonstrate that the defendant "knowingly engage[d]" in conduct threatening the person or property of another "with intent to retaliate" against a witness, victim, or informant for providing information to a

law enforcement officer concerning a federal offense. 18 U.S.C. § 1513. Since the government was required to establish that Torres acted not only knowingly, but also with an intent to retaliate, this is a specific intent crime. *See* 1 W. LaFave & A. Scott, Substantive Criminal Law, § 3.5, at 315 (1986) (specific intent "designate[s] a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime.") The Rule 404(b) evidence thus went to a matter at issue, and therefore meets the first part of the admissibility test.

### 2. Similarity and Temporal Proximity

The second section of the Rule 404(b) test requires that the other acts be sufficiently similar and close enough in time to the charged act to be relevant to the matter they are offered to prove—in this case Torres's intent. As to the temporal proximity requirement, we have recognized that the analysis must be flexible, observing that "Questions about 'how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible." *United States v. Beasley*, 809 F.2d 1273, 1277 (7th Cir.1987). By the same token, questions about "how similar is similar enough" also do not have uniform answers; these answers too depend on the theory that makes the evidence admissible, and must be reached on a case-by-case basis. Thus, similarity means more than sharing some common characteristics; the common characteristics must relate to the purpose for which the evidence is offered. As the Fifth Circuit stated: "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc). We thus examine each of the extrinsic criminal acts in this case to determine whether Torres committed them with the same type of retaliatory intent that he allegedly harbored when he threatened Blas and Glarza for the former's coopera-

tion with federal authorities, and whether the prior acts occurred within a time period proximate enough to be relevant to the charged offense.

The first extrinsic act is Torres's shooting into the car wash at the man who allegedly stole his television and VCR. This act, which took place just less than two years before the incident at the grocery store, was clearly a violent act of retaliation by which Torres hoped to intimidate someone he believed had wronged him. It is thus similar to the charged offense of threatening to retaliate against a government witness who may have incriminated him. Evidence of the car wash shooting showed that Torres intended to frighten and intimidate Jose Santiago by firing bullets in his direction; this evidence was relevant to the issue of whether he had a similar intent when threatening Glarza and Blas. Further, the close similarity of the mental states during each act erases any difficulty as to their probity that might arise by their occurring nearly two years apart; two years is plainly recent enough when the acts are so alike. *Cf. United States v. Harrod*, 856 F.2d 996, 1002 (7th Cir.1988) (five-year-old convictions admissible under Rule 404(b) because of their close similarity to the charged offense); *United States v. Chaimson*, 760 F.2d 798, 807 (7th Cir.1985) (similar acts committed five years ago admissible under Rule 404(b)). The evidence of the car wash shooting is thus sufficiently similar and also close enough in time to satisfy the second element of the Rule 404(b) test.

The second extrinsic act occurred on September 21, 1989, some twenty months before the threats in the grocery store. On that date Torres was arrested with concealed weapons in his car and live bullets in his pocket. Moreover, a spent .22 clip found at the scene of the nearby street fight matched the unloaded .22 pistol recovered from the defendant's vehicle, another piece of evidence leading to the conclusion that Torres had in fact fired shots during the fight. The district judge stated that the relevancy of this incident may have been tenuous as to Torres's intent, but admitted it nonetheless, inferring from the nature of Torres's conduct after the street fight that he must have been engaged in retaliatory activity.

[T]he court is, frankly, not fully apprised as to precisely what was at issue with regard to the shooting incident that occurred on September 21st in the 2600 block of North Holton with regard to shots being fired.

However, the court simply cannot overlook the reality that when shots are fired, [and] a vehicle leaves the scene as opposed to awaiting law enforcement authorities or contacting law enforcement authorities, one is left with the inescapable conclusion that there was untoward conduct which could clearly be described and determined by a fact-finder that was retaliatory in nature.

Trial Transcript, at 91. Though this reasoning—that leaving a scene where shots have been fired somehow proves retaliatory intent—is suspect, we nevertheless affirm the court's decision to admit this evidence because, as explained below, we believe it to be sufficiently similar and recent in time to satisfy the second element of the Rule 404(b) test. In other words, while the fact that Torres left the scene of the shooting has questionable relevance, the evidence, when considered in its totality, adequately demonstrates that he acted with retaliatory intent in the past, making it admissible under Rule 404(b) and eliminating the reservations and problems we might have about the trial court's unusual reasoning. *See United States v. Gustafson*, 728 F.2d 1078, 1083 (8th Cir.1984) ("The decision to admit such evidence will be reversed only when it is clear that the questioned evidence had no bearing upon any of the issues involved at trial.")

The most salient aspect of this incident is that Torres was found with concealed weapons in his vehicle, and strong circumstantial evidence demonstrated that he had fired this gun during a street fight a few hours before (the clip found at the fight scene fit the gun found hidden in his car shortly after the fight; witnesses said his car had been involved in a second shooting

incident thirty minutes after the fight; he was carrying bullets for that gun in his pockets when stopped). Such evidence is probative of Torres's intent at the grocery store because it demonstrates that when he is crossed or under attack he retaliates with a weapon in a violent fashion. Street fights arouse strong emotions, and Torres acted on his emotion by firing a .22 pistol. Similarly, the evidence at trial established that Blas's cooperation with law enforcement officials had angered Torres, and that Glarza believed Torres was carrying a gun in his coat. Thus, the concealed weapons incident was relevant to prove Torres's intent when threatening Glarza—the intent to violently retaliate against perceived enemies. Further, the street fight took place only twenty months before the threats here, making it recent enough to be relevant. *Cf. Harrod,* 856 F.2d at 1002; *Chaimson,* 760 F.2d at 807. Accordingly, it was not error to admit this evidence.

■ Even if we were to assume, *arguendo,* that the admission of this evidence was erroneous, we would affirm under a harmless error analysis. Error in admitting Rule 404(b) evidence may be deemed harmless if "we are convinced that the error did not influence the jury, or had but very slight effect, and can say with fair assurance ... that the judgment was not substantially swayed by the error." *Shackleford,* 738 F.2d at 783 (internal quotation marks omitted); *United States v. Bailey,* 957 F.2d 439, 442 (7th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 3053, 120 L.Ed.2d 919 (1992). Here any error would be harmless because even without the concealed weapons evidence the jury's verdict would almost certainly have been the same. *Bailey,* 957 F.2d at 442; *Gruttadauro,* 818 F.2d at 1329. Both Juan Glarza and Torrey Bodie gave eyewitness testimony as to Torres's aggressive acts and related the substance of his threats. Their recollections were consistent, particularly as to the fact that Torres repeatedly mentioned Blas's cooperation with "the Feds" and his goal of getting back at her for that cooperation. This testimony thoroughly undermined the defense theory that Torres was only angry at Blas for telling the neighborhood he had blown up her car.[2] Moreover, the evidence of the car wash shooting added to the proof of his retaliatory intent. Finally, the court instructed the jury to consider the 404(b) evidence on only the issue of intent, reducing the possibility that any improper evidence skewed the outcome. *United States v. Montoya,* 891 F.2d 1273, 1286 (7th Cir.1989).

### 3. Probative Value Versus Prejudice

■ Torres's third challenge to the admission of the other acts evidence is that its probative value was outweighed by its danger of unfair prejudice. This aspect of the Rule 404(b) analysis overlaps with Rule 403, which states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. We discussed the interplay between these rules in *Beasley:*

> The district judge must both identify the exception [under Rule 404(b)] that applies to the evidence in question and evaluate [under Rule 403] whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character.

809 F.2d at 1279. In other words, the more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote. *See Beechum,* 582 F.2d at 914 ("It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice.")

---

**2.** What Torres actually said was "Why did your daughter turn me in to the Feds for telling them that I blew up her car." This does not indicate that Torres was upset because of what Blas told the neighbors, but that he was angry because he thought she had told "the Feds" that he blew up her car. We note that if his true purpose was "only" to threaten Blas for informing authorities about his vandalism, then that too would have violated 18 U.S.C. § 1513.

■ The district judge found no danger of unfair prejudice because the evidence would be limited to the issue of intent, without exposing unnecessary details simply to make the defendant look bad. This determination is treated with great deference because of the trial judge's first-hand exposure to the witnesses and evidence as a whole, and because of his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding. *United States v. Levy*, 741 F.2d 915, 924 (7th Cir.1984).

■ As to the car wash shooting, we agree with the district court's decision that its probative value outweighed the risk of prejudice. The incident was similar to the crime charged and no evidence beyond the essential facts of the incident was adduced. Additionally, any reflection on Torres's character was merely incidental to the proof of his intent to intimidate and retaliate against Blas, and the likelihood of misusing the evidence was reduced by the court's limiting instruction to the jury.[3] *Montoya*, 891 F.2d at 1286. Finally, even though the government might have been able to prove Torres's intent with Glarza's and Bodie's testimony alone, the evidence had significant probative value to the government, and admitting it was not an abuse of discretion.

■ A similar analysis applies to the evidence of the concealed weapons incident. Like the car wash shooting, this incident was probative of the defendant's intent due to its relatively recent occurrence and similarity to the charged conduct. It was also subject to the court's limiting instruction and, though there may have been some danger of prejudice to Torres, we agree with the trial court that this danger did not substantially outweigh the event's probative value.

### B. *Sentencing: Upward Departure*

The district court departed upward from the original sentencing range of 51–63 months based on its finding that Torres's Criminal History category of IV did not adequately reflect the seriousness of his past criminal conduct. *See* U.S.S.G. § 4A1.3 (policy statement). After listening to officer Irizarry's testimony concerning Torres's prior criminal activity, the court decided that he actually belonged in criminal history category VI, yielding a higher sentencing range of 70–87 months. He received an 85–month term.

We analyze upward departures in three steps:

> [W]e begin with a *de novo* review of the court's stated grounds to ascertain that they are of a kind that may be relied on to justify a departure. If they are, we then review the facts underlying the departure, and will reverse the district court only if its factual findings were clearly erroneous. Finally, we review the degree of departure to determine if it was reasonable, giving "considerable leeway to a sentencing court's determination of what Criminal History category most accurately reflects the defendant's actual criminal history."

*United States v. Spears*, 965 F.2d 262, 278 (7th Cir.1992) (citations omitted), quoting *United States v. Lewis*, 954 F.2d 1386, 1396 (7th Cir.1992).

■ Tacitly conceding that the reason for the departure was proper and its degree reasonable, the defendant's argument implicates only the second step of this analysis. Specifically, he claims that the government never met its burden of proving that he actually committed the five acts used to justify the departure (the battery, the robbery, the criminal damage to property, the car wash shooting, and the concealed weapons incident). The government's burden here was proof by a preponderance of the evidence. *United States v. Terry*, 930 F.2d 542, 545 (7th Cir.1991). It attempted to meet this burden through the testimony of officer Irizarry and the trial testimony concerning Torres's prior acts.

**3.** The court told the jury: "You have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence only on the question of the defendant's intent and motive. This evidence is to be considered by you only for this limited purpose." Trial Transcript, at 315.

Torres complains that this was insufficient, contending that Irizarry did little more than repeat the contents of arrest reports, and that the court never had an opportunity to question the alleged crimes' victims and witnesses.

 It is true that an arrest record, standing alone, cannot justify an upward departure. *Id.* But the information relayed to the court was far more in depth than mere arrest records. Officer Irizarry had personally investigated each of the three incidents he described (the battery, the robbery, and the criminal damage to property), Lisetta Miranda was an eyewitness to the car wash shooting, and Officer Rosenthal made the arrest on the concealed weapons charge. The testimony of the witnesses was based on personal investigation and observation, not some cold antiseptic record,[4] and could certainly be deemed reliable by the district court. And although Torres suggests that Irizarry's testimony was based primarily on hearsay, and therefore was inadequate to prove the prior acts by a preponderance of the evidence, it is patently clear that hearsay evidence is admissible at sentencing hearings. Fed. R.Evid. 1101(d)(3); 18 U.S.C. § 3661; *see also United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) ("a [sentencing] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."); *United States v. Harty,* 930 F.2d 1257, 1268 (7th Cir.1991). Indeed, this court recently reiterated that "a sentencing judge is free to consider a wide variety of information that would be inadmissible at trial, including hearsay." *United States v. Beal,* 960 F.2d 629, 634 (7th Cir.1992) (internal quotation marks omitted). It is both necessary and proper to take account of pertinent information regarding the defendant's past. "It [is] clear that a sentencing judge can and must consider a defendant's *entire* history in order that he might make an informed decision as to the proper punishment." *United*

*States v. Coonce,* 961 F.2d 1268, 1275 (7th Cir.1992), citing *United States v. Madison,* 689 F.2d 1300, 1314–15 (7th Cir.1982). Thus, the district court permissibly relied on the testimony of Irizarry, Miranda, and Rosenthal in evaluating Torres's criminal history and crafting an appropriate sentence.

 In addition, Torres never denied his involvement in any of these incidents, arguing instead that they should not be considered at all because the charges were all either pending, dismissed, or had been resolved in his favor. When a defendant has an opportunity to and fails to object to the facts, information, and records used to support a departure, there is little reason to question a district court's decision. *United States v. Gaddy,* 909 F.2d 196, 201 (7th Cir.1990); *see also United States v. Elmendorf,* 945 F.2d 989, 995 (7th Cir. 1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 990, 117 L.Ed.2d 151 (1992). Moreover, each of the incidents relied upon by the court could properly be used against him despite the fact that none had yet resulted in a conviction. *See Terry,* 930 F.2d at 545 (court may consider charges dropped (or dismissed) after a witness failed to appear); *United States v. Berkowitz,* 927 F.2d 1376, 1391 (7th Cir.1991) (court may consider fact that charges on prior crimes were pending when instant offense occurred); *United States v. Fonner,* 920 F.2d 1330, 1333 (7th Cir.1990) (court may consider past acts for which defendant was acquitted, so long as government proves conduct by a preponderance of the evidence); *United States v. Feekes,* 929 F.2d 334, 337 (7th Cir.1991). It was not clear error to find this evidence reliable, nor was it error to use it as the pedestal for a departure.

## IV. CONCLUSION

We affirm Torres's conviction and hold that the evidence of the car wash shooting and the concealed weapons incident was properly admitted under Rule 404(b). We

---

**4.** We note that while arrest record alone will not justify a departure, detailed police investigation reports may supply reliable information of

prior similar adult criminal conduct. *See Terry,* 930 F.2d at 545–46.

also affirm the upward departure under Guideline § 4A1.3, as the government met its burden of proof and established that the defendant committed the conduct at issue.

AFFIRMED.