46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Jose C. FALCON and Mark M. Rodriguez, Defendants/Appellants.
 Nos. 94-2197, 94-2198.
 United States Court of Appeals, Seventh Circuit.
 Argued: Nov. 15, 1994.*
Decided: Dec. 21, 1994.
 
 Before COFFEY, RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Jose Falcon and Mark Rodriguez were each convicted of conspiracy to possess cocaine with intent to distribute and possession with intent to distribute cocaine, 21 U.S.C. Secs. 841(a)(1), 846 and 18 U.S.C. Sec. 2. They appeal the admission of Falcon's prior conviction for conspiracy to possess with intent to distribute cocaine under Fed. R. Evid. 403 and 404(b). We affirm.
 
 
 2
 On July 27, 1993, Gary Crober, an informant for the Wisconsin Department of Justice, Division of Narcotics Enforcement ("DNE"), accompanied by Mark Ramirez, Rodriguez' brother-in-law, visited Rodriguez at his home. Falcon lived next door. During the prior week, Crober had agreed to purchase cocaine from Rodriguez, who had shown him a quarter ounce sample. While Crober and Ramirez went inside the home, DNE Agent David Spakowicz, posing as Crober's cousin, parked in front. Crober had arrived two and a half hours late. Rodriguez told him that the cocaine had already left the premises and needed to be brought back. Rodriguez briefly left with Ramirez to use a pay phone. About twenty minutes later, Tracy Reves-Rivera arrived at Rodriguez' home and announced that "five-O," the police, were in the neighborhood. Rodriguez and Reves-Rivera then left to tour the neighborhood on a motorcycle. Ramirez testified that while they were out, Falcon knocked at the back door, asked for Rodriguez, and got into a red Mustang with another man. Falcon later told Agent Spakowicz that his girlfriend owned a red Mustang that he drove frequently. Rodriguez and Reves-Rivera returned. When the Mustang also returned, Rodriguez said that the drugs had arrived.
 
 
 3
 Rodriguez asked Crober and Ramirez to sit in the front of the house. Ramirez saw Falcon and another man enter through the back door into the kitchen. Rodriguez then walked from the kitchen into the living room carrying two bags of cocaine. He said that each one weighed nine ounces. He offered to sell Crober eight ounces from one of the bags, but said that the other was to be sold to someone else. Rodriguez would not let Crober and Ramirez enter the kitchen because "his guy" did not want to meet them.
 
 
 4
 At this point, Crober left with Ramirez supposedly to get more money for the purchase from "cousin" Spakowicz. Police arrested Ramirez, who later agreed to become an informant. Within a few minutes, the Milwaukee police and DNE agents stopped Reves-Rivera as he left the house and found Rodriguez and Falcon inside. Falcon told Agent Spakowicz that he was in the house for a social visit. Rodriguez told another DNE agent that the Crober took the drugs out of the house, but then recanted, saying that he was joking. Officials found no drugs, guns, drug notes or large sums of money at the Rodriguez or Falcon homes. They arrested neither Falcon nor Rodriguez.
 
 
 5
 On August 23, 1993, Rodriguez, a man known as "Psycho" and a third man entered Ramirez' home during a visit by Crober, while more people waited in two cars outside. Rodriguez punched Crober repeatedly. He said that Crober's actions had forced him to flush all eighteen ounces of cocaine. He threatened to kill Crober unless he paid for the loss. Thereafter, Ramirez posed as an intermediary concerning this debt. The government taped phone conversations in which Rodriguez told Ramirez that "Jose" (as in Jose Falcon) supplied the cocaine and that "once I pay that off man, he'll start giving me big quantities again." (Ex. 3A.)
 
 
 6
 We recently stated again in United States v. Kreiser, 15 F.3d. 635, 640 (7th Cir. 1994) (citations omitted), that "[i]n determining whether evidence of the sort at issue here is admissible pursuant to Rules 403 and 404(b), we ask whether:
 
 
 7
 (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.
 
 
 8
 We review the district court's admission of evidence for abuse of discretion. United States v. Maholias, 985 F.2d 869, 878 (7th Cir. 1993) (citation omitted). "The issue before us is not whether we would have admitted the challenged evidence, but whether the district court offered a principled basis for its decision." Id.
 
 
 9
 Falcon claims that the government failed to show the relevance of the prior conspiracy to proving the issue of specific intent, that the conspiracies lack sufficient similarity and that the prejudicial effect of the prior bad act outweigh its probative value. Rodriguez filed a joint appellate brief with Falcon, and thus he claims that this erroneous admission prejudiced his own case. However, the district court limited any prejudice to Rodriguez by instructing the jury not to use the prior conspiracy as evidence of his guilt. United States v. Davis, 838 F.2d 909, 916 (7th Cir. 1988). Although we will discuss the alleged errors in relation to Falcon, our analysis applies equally to Rodriguez' identical claims.
 
 
 10
 Falcon claims that the prosecution failed to meet the first prong of the test by demonstrating the relevance of the prior crime to the issue of specific intent. Conspiracy with intent to distribute is a specific intent crime, Maholias, 985 F.2d at 879, as is possession with intent to distribute a controlled substance, United States v. Goodapple, 958 F.2d 1402, 1407 (7th Cir. 1992). In cases involving a specific intent crime, "intent is automatically in issue ...." United States v. Monzon, 869 F.2d 338, 344 (7th Cir.), cert. denied, 490 U.S. 1075 (1989). However, the evidence proffered must be "'directed toward establishing' intent." United States v. Chaimson, 760 F.2d 798, 806 (7th Cir. 1985). The prosecution "'must show the relevance of the evidence to the question of intent."' United States v. Manganellis, 864 F.2d 528, 533 (7th Cir. 1988) (quoting Chaimson, 760 F.2d at 813 (Cudahy, J., concurring)).
 
 
 11
 The government properly contends that Falcon's participation in a recent drug conspiracy tends to make the existence of specific intent to do the same more probable in this case, and thus it is relevant to the issue of intent. Fed. R. Evid. 401. Furthermore, due to the circumstantial nature of the government's case against Falcon, this prior conspiracy conviction is "reasonably necessary" to meet the government's burden of proof without threatening to "'flood the courtroom with other crimes evidence."' United States v. Liefer, 778 F.2d 1236, 1243 n.3 (7th Cir. 1985) (quoting Chaimson, 760 F.2d at 813; citing United States v. Kane, 726 F.2d 344, 348 (7th Cir. 1984)).
 
 
 12
 Falcon disputes the district court's finding of similarity between the two conspiracies.[2] "[Q]uestions about 'how similar is similar enough' do not have uniform answers; these answers ... depend on the theory that makes the evidence admissible, and must be reached on a case by case basis." United States v. Torres, 977 F.2d 321, 326 (7th Cir. 1992). Although it appears clear that the inquiry does not end with a comparison of the statutory offenses, "'[t]he prior acts need not be duplicates of the one for which the defendant is now tried."' United States v. York, 933 F.2d 1343, 1350 (7th Cir.) (quoting United States v. Radseck, 718 F.2d 233, 237 (7th Cir. 1983) (citation omitted)), cert. denied, 112 S. Ct. 321 (1991); id. at 1351 ("We need not rely solely on the most obvious similarities between the crimes."); see United States v. McAnderson, 914 F.2d 934, 940, 946 (1990) (finding conspiracy to deal drugs similar to conspiracy to purchase anti-tank rocket and to commit acts of terrorism). "Thus, similarity means more than sharing some common characteristics; the common characteristics must relate to the purpose for which the evidence is offered." Torres, 977 F.2d at 326. In order to be relevant, the factual distinctions must create the inference of different frames of mind.
 
 
 13
 The parties stipulated that on April 6, 1993, Milwaukee Police officers recovered half a kilogram of cocaine while searching Wally's Place, a garage. (R. at 28.) The owner, Wallace Seymour, told police that he and Nick Adams had received quantities from Falcon twice a week over a period of three months. Id. Overall, Seymour and Adams received between 3.5 and 5 kilograms of cocaine from Falcon during that period. Id. Falcon pleaded guilty to conspiring to possess with intent to distribute cocaine, although he stated that the conspiracy lasted approximately four months. Id.
 
 
 14
 The two conspiracies have a number of similarities from which a jury could infer specific intent. Although Falcon attempts to distinguish the prior conspiracy as sophisticated and organized, the one in this case is more than a casual, amateurish conspiracy to sell drugs to the next-door neighbor. The evidence indicates multiple shipments for further distribution to multiple clients. In both cases, Falcon delivered large amounts, although shipments in the case at hand are somewhat more substantial.[3] The conspirators kept the cocaine away from their homes at some unknown location. They employed Reves-Rivera's services for counter-surveillance, and Falcon had at least one other assistant. Rodriguez even refused to have a phone in his house to avoid wiretaps. The lower court could find without abusing its discretion that this new conspiracy is a similarly "sophisticated, continuing business enterprise." (Appellants' Br. at 15). Falcon points out that the distributors operated out of a business in one case and a home in the other. In light of the other relevant similarities, this distinction is not sufficient to defeat the court's finding that the prior conspiracy supported the inference of criminal intent.
 
 
 15
 Falcon claims that the prejudicial effect of this evidence outweighs its probative value. In particular, he argues that the circumstantial nature of the government's case against him heightens the threat of prejudice. However, circumstantial evidence may not only help prove a conspiracy, but it may constitute the sole evidence of the conspiracy. United States v. Vega, 860 F.2d 779, 793-94 (7th Cir. 1988) (citation omitted). Thus, the circumstantial nature of the other evidence against Falcon does not necessarily nullify the probative value of this prior crime. However, the prior crime evidence must still pass the general balancing test.
 
 
 16
 "[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is remote." Torres, 977 F.2d at 328; see United States v. Rivera, 6 F.3d 431, 443 (7th Cir. 1993) ("When evidence is particularly probative, we will tolerate a higher risk of prejudice.") (citation omitted), cert. denied, 114 S. Ct. 1098 (1994). If "the balance is close, the district court did not abuse its discretion by finding that the danger of unfair prejudice does not 'substantially' outweigh the statement's probative value." United States v. Sophie, 900 F.2d 1064, 1074 (7th Cir.), cert. denied, 498 U.S. 843 (1990).
 
 
 17
 The prior conspiracy is relevant to the question of whether Falcon intended to conspire to distribute cocaine. The prejudice derives from the danger that the jury will convict him simply because of his involvement in the last offense. However, the district court limited the prejudice to Falcon by instructing the jury that it could only use this evidence against him for the issue of intent.[4] Rivera, 6 F.3d at 444. The court also lessened the prejudice by instructing the parties to limit the details concerning the prior charge. Torres, 977 F.2d at 329; United States v. Shackleford, 738 F.2d 776, 780 (7th Cir. 1984). It enforced this instruction by refusing to admit into evidence Falcon's plea agreement and a certified copy of the criminal docket.
 
 
 18
 Given the contours of the prior conspiracy and the limiting instructions, the court did not abuse its discretion in admitting this evidence.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Appeal No. 94-2198 was submitted for decision without argument
 
 
 [2]
 Falcon and Rodriguez also assert that the court lacked sufficient information to properly assess similarity before ruling. The record indicates prior unrecorded conversations, and the amount of detail presented remains uncertain. However, the defendants did not object to insufficient foundation at trial, and thus they have waived the issue
 
 
 [3]
 Each shipment displayed by Rodriguez was just over a quarter of a kilogram. (9 oz = = 255.15 gm.) Estimates of average shipments in the prior conspiracy would vary from just under an eighth of a kilogram (3.5 kg/32 shipments = = 109.38 gm) to just over a fifth of a kilogram (5 kg/24 shipments = = 208.33 gm)
 
 
 [4]
 When the evidence concerns only one party in a multi-party trial, the trial judge "must also consider any possible 'spillover' prejudice that may unfairly prejudice other defendants." Davis, 838 F.2d at 916. In this case, the court limited "spillover" prejudice by instructing the jury not to use the conspiracy as evidence of Rodriguez' guilt